UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| H. HIRSCHMANN, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:15-cv-00034 |
| ) | |
| GREEN MOUNTAIN GLASS, LLC, and ) | |
| ADCO PRODUCTS, LLC, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER RE:
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND MOTION TO
CERTIFY QUESTION TO VERMONT SUPREME COURT**
(Docs. 38, 48)

This warranty claim arises out of the sale of a sealant used in the production of insulated windows. Defendant ADCO Products, LLC ("ADCO") is the manufacturer. Defendant Green Mountain Glass, LLC ("GMG") is the purchaser. GMG used the sealant in fabricating windows for its customer Plaintiff H. Hirschmann, Ltd. ("Hirschmann"). Pending before the court is Defendant ADCO's Motion to Dismiss for Failure to State a Claim (Doc. 38) and Plantiff's Motion to Certify Question to Vermont Supreme Court (Doc. 48). The court heard argument on April 25, 2016. Counsel was allowed to file supplemental briefing and the motions were taken under advisement on May 2, 2016. For the reasons discussed below, Defendant's Motion to Dismiss is DENIED, and the Motion to Certify Question is DENIED as moot.

**Background**

The court accepts as true the allegations of the First Amended Complaint. (Doc. 37.)

Hirschmann is a Vermont corporation engaged in the design and manufacture of high-end custom wood windows and doors. (Doc. 37 at ¶ 2.) On February 1, 2010, Hirschmann contracted with Bulley & Andrews, LLC to supply 2,000 custom-made insulated windows, doors, and related products for a construction project in Chicago, Illinois ("the project"). (*Id.* at ¶ 13–14.)

1

Hirschmann subcontracted with GMG to make insulated glass units for the project. GMG is a New Hampshire corporation with a principal place of business in Charlestown, New Hampshire.

In building the insulated glass units, GMG ordered and used a sealant manufactured by ADCO. (*Id.* at ¶ 24.) ADCO is a Delaware corporation with its principal place of business in Michigan. (*Id.* at ¶ 6.)

Some of the windows failed after installation due to problems with the sealant. (*Id.* at ¶ 23.)

Hirschmann filed suit against GMG. GMG then filed a third-party action for indemnity against ADCO. On February 16, 2016, the court granted Hirschmann's motion to amend the complaint to add its own claim against ADCO. ADCO now moves to dismiss this claim on the grounds that Hirschmann's claim against it fails for lack of contractual privity.

## Analysis

The parties disagree about which state's substantive law governs the privity issue.[1] Hirschmann seeks to apply the law of Michigan or New Hampshire. These states permit implied warranty claims in cases involving economic loss, even in the absence of contractual privity. ADCO seeks to apply the law of Vermont because privity remains a requirement for implied warranty cases not involving personal injury. *See Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*, 2012 VT 80, ¶¶ 30–35, 192 Vt. 322, 59 A.3d 752 (holding that implied warranties of habitability and good workmanship do not extend to subsequent purchaser of real property who lacked contractual relationship with contractor).

In a diversity case, the federal court applies the conflict of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). The sale of the sealant by ADCO to GMG is governed by the Vermont Uniform Commercial Code ("UCC") which applies to "transactions in goods." 9A V.S.A. § 2-102. The UCC's choice of law provision provides: "In the absence of [a contractual choice of law provision], this title applies to transactions

---

[1] The parties agree that the "economic loss" rule bars any claim of negligence. *See EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30, 181 Vt. 513, 928 A.2d 497 (2007). The only theory of recovery open to Hirschmann is breach of warranty.

2

bearing an appropriate relation to this state." 9A V.S.A. § 1-301(b). "A law bears a reasonable relation to a transaction when a significant portion of the making or performance of the contract occurs in that jurisdiction." 1 White, Summers, & Hillman, *Uniform Commercial Code* § 1.19 n.4 (6th ed. 2015).

In determining whether Vermont substantive law concerning the requirement of privity of contract has a sufficient relation to this transaction to require its application, the court turns to the Restatement (Second) of Conflicts (the "Restatement").[2] *See Elhannon LLC v. The F.A. Bartlett Tree Expert Co.*, No. 2:14-cv-262, 2015 WL 5097244, at *4 (D. Vt. Aug. 28, 2015) ("When contractual parties have not specified the state law to be applied in a given case, Vermont uses the test laid out in Restatement (Second) Conflict of Laws . . . to determine which state has the most significant relationship to the transaction and the parties." (citations omitted)). The court begins with the Restatement's most general provision and ends with its most specific.

**I.      Section 6 of the Restatement**

Section 6 of the Restatement provides an analytical framework for conflict issues of any description. In the absence of a specific statute, § 6 sets out seven policy factors to guide courts in choosing the law of one forum over another. *See* Restatement (Second) of Conflicts § 6; *see also id.* at § 188 ("The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6."). The court considers each § 6 factor in turn.

**A.      The Needs of the Interstate and International System**

This factor does not apply to this case. The sale of goods can occur with or without the application of a privity requirement. As this case demonstrates, states differ in their policies on this issue, and products and commerce continue to move under either regime. New Hampshire and Michigan have eliminated privity as a defense; Vermont has retained it. All three states

---

[2] The Vermont Supreme Court has long relied on the Restatement for guidance in choice of law questions. *See McKinnon v. F.H. Morgan & Co.*, 170 Vt. 422, 423, 750 A.2d 1026, 1028 (2000) ("This [c]ourt has adopted the Restatement (Second) of Conflicts for choice-of-law questions in both tort and contract cases."); *see also Pioneer Credit Corp. v. Carden*, 127 Vt. 229, 233, 245 A.2d 891, 894 (1968) (following prior version of Restatement for resolution of contract dispute).

3

continue to participate in the national economy. There is no systemic demand for one rule over another.

    **B.    The Relevant Policies of the Forum**

In 1966, the Vermont legislature replaced the Uniform Sales Act with Article 2 of the Uniform Commercial Code, and modified the requirement of contractual privity to permit any natural person who might reasonably be expected to use or be affected by a product to sue for personal injury. *See* 9A V.S.A. § 2-318. This provision left the defense of privity in place for economic loss which might occur through the use of a product. The official comment to § 2-318 states in part:

> Beyond [the inclusion of family, household, and guests of the purchaser], the section in this form is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain.

Since 1966, there has not been a Vermont Supreme Court case which squarely addressed the availability of the privity defense in an action for beach of implied warranties under the UCC. In *Gochey v. Bombardier, Inc.*, 153 Vt. 607, 613, 572 A.2d 921, 924 (1990), the Vermont Supreme Court did away with privity as a defense to claims of express warranty violations on the ground that "when a manufacturer expressly warrants its goods, it, in effect, creates a direct contract with the ultimate buyer."

In cases involving implied warranty claims, Vermont has continued to adhere to the traditional requirement of privity of contract in cases not involving personal injury or physical damage. *See Vermont Plastics, Inc. v. Brine, Inc.*, 79 F.3d 272, 281 (2d Cir. 1996) ("[The *Gochey* decision] suggests that the [Vermont Supreme Court] remained concerned with maintaining some relationship in the context of a consumer purchase analogous to contractual privity between the manufacturer and consumer in order for the consumer to recover economic damages." In construction disputes, which fall beyond the scope of the UCC, the Vermont Supreme Court has continued to enforce the privity requirement. *See Long Trail House Condo. Ass'n*, 2012 VT at ¶ 31 ("Our case law plainly contemplates the existence of contractual privity before a breach of implied warranty claim can be raised.").

4

In the absence of a statutory change or a change of direction in the decisional law, it is clear that Vermont continues to recognize a policy in favor of limiting redress for claims of implied warranty to persons who are in privity with the seller.

### C. The Relevant Policies of Other Interested States and the Relative Interests of Those States in the Determination of the Particular Issue

Both Michigan and New Hampshire, home states for the seller and purchaser of the sealant, respectively, have opened the remedy of implied warranty claims to third parties who are *not* in privity with the seller. New Hampshire has adopted a version of § 2-318 which would allow a claim by Hirschmann against ADCO:

> Lack of privity shall not be a defense in any action brought against the manufacturer, seller or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, even though the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods. A manufacturer, seller, or supplier may not exclude or limit the operation of this section.

N.H. Rev. Stat. § 382-A:2-318.

In Michigan, the absence of a privity defense long predates the adoption of the UCC. *See generally Spence v. Three Rivers Builders & Masonry Supply, Inc.*, 353 Mich. 120 (1958). Despite the adoption of a version of § 2-318 which is identical to Vermont law in limiting the enforcement of implied warranties against third parties to natural persons suffering personal injury, *see* M.C.L. § 440.2318, courts applying Michigan law have continued to recognize the availability of an implied warranty claim against a remote seller or manufacturer for economic loss. *See* S*ullivan Indus., Inc. v. Double Seal Glass Co.*, 192 Mich. App. 333, 341–345 (1991) (remote manufacturer of sealant used in production of doors and windows subject to claim of implied warranty under UCC); *see also Farley v. Country Coach Inc.*, 403 F. App'x 973, 977 (6th Cir. 2010); *Pack v. Damon Corp.*, 434 F.3d 810, 818–820 (6th Cir. 2006). The Michigan Supreme Court has not addressed the issue directly since the *Spence* decision.

Both the law of the place of manufacture (Michigan) and the law of the place of delivery and use (New Hampshire) would permit an implied warranty claim in the absence of privity.[3] These two states have a more direct interest in the dispute than Vermont which is the location only of Hirschmann which neither purchased nor made use of the sealant.

### D.     The Protection of Justified Expectations

Since neither the manufacturer nor the purchaser of the product at issue is located within Vermont, and the Vermont company seeks to enforce the implied warranty, no party in this case has a basis for asserting a justified expectation that they would receive the protection of the privity requirement in Vermont law.  ADCO in particular manufactured the sealant in a state which permits implied warranty claims against remote manufacturers and sold it to a customer in a state which also permits such claims.  ADCO and GMG cannot be surprised that the law of Michigan or New Hampshire may be controlling.  *See Gen. Acceptance Corp. v. Lyons*, 125 Vt. 332, 334, 215 A.2d 513, 515 (1965) ("Where the contract contains no explicit provision that it is to be governed by some particular law, the courts determine the law which the parties presumably intended to be controlling.").

### E.     Basic Policies Underlying the Particular Field of Law

There is no right or wrong answer concerning the enforcement of implied warranties. The states have developed various answers to the problem presented in this case through legislation and case law.  It is not possible to identify a "basic policy" which favors the Vermont rule limiting implied claims for economic loss to parties in privity with the defendant.

### F.     Certainty, Predictability, and Uniformity of Result

The pursuit of consistency is a great value in the law.  In this case, however, the policy factor begs the question.  Consistency with Vermont law is inconsistent with the law of Michigan and New Hampshire.  The resident of at least one state is going to receive a ruling which is inconsistent with its substantive law.

---

[3] Plaintiff's First Amended Complaint (Doc. 37) is silent regarding possible disclaimers and other defenses to a potential warranty claim, and the court makes no judgment on these issues.

G.   **Ease in the Determination and Application of the Law to be Applied**

The three statutory and decisional laws of the jurisdictions at issue are all equally accessible for purposes of research and understanding.

II.  **Consideration of Other Restatement Provisions**

The factors set out in § 6 of the Restatement do not lend themselves to a dispositive ruling. Some § 6 factors, in particular subsection b (the relevant policies of the forum), support the application of Vermont law. Other § 6 factors, such as subsection c (the relevant policies of other interested states) and subsection d (the protection of justified expectations), favor applying New Hampshire or Michigan law.

The court therefore turns next to §§ 188 and 191 of the Restatement.

A.   **Section 188 of the Restatement**

Section 188 of the Restatement provides the general rule for contracts when the parties have not selected the governing law. It offers five factors to be used "in applying the principles of § 6 to determine the law applicable to an issue." Restatement (Second) of Conflicts § 188(2). These factors include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." *Id.* at § 188(2)(a)-(e).

- *Place of contracting*: The sealant was ordered by a New Hampshire company and delivered in New Hampshire. In the absence of any argument or allegation to the contrary, New Hampshire appears to be the place of contracting. The place of contracting is a relatively important "contact point[ ] of the contract," and is "entitled to substantial weight" in the choice of law application. *See Pioneer Credit Corp. v. Carden*, 127 Vt. 229, 233, 245 A.2d 891, 894 (1968) (citation omitted).

- *Place of negotiation*: On a motion to dismiss, nothing is known about the details of how and where the order for the sealant was negotiated.

- *Place of performance*: The sealant was delivered to New Hampshire which completed ADCO's performance. Another important contact point, the place of contractual performance, is likewise entitled to significant consideration in the choice of law analysis. *See id.*

- *Location of the contract's subject matter*: This case involves a multi-state transaction that took place in Michigan, New Hampshire, Vermont, and Illinois. Vermont would seem to be the least likely candidate for "location of the subject matter" since the sealant was applied in New Hampshire and failed in Illinois. The sealant passed through Vermont as a component part of the window units incorporated into larger architectural pieces by Hirschmann.

- *Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties*: Each party has its domicile, residence, nationality, place of incorporation, and place of business in a different state.

The § 188 factors favor New Hampshire as the source of substantive law since so many aspects of the transaction (selecting and ordering the product; delivery; and use of the product in the manufacturing process) occurred there. The weight of contacts with Vermont is significantly less. Examining the "points of contact . . . with a view to determining the 'center of gravity' of the contract," it would appear that the jurisdiction of New Hampshire is most intimately concerned with the matter at hand. *See Gen. Acceptance Corp.*, 125 Vt. at 334, 215 A.2d at 515 (citations omitted); *see also Boston Law Book Co. v. Hathorn*, 119 Vt. 416, 423, 127 A.2d 120 (1956).

### B.   Section 191 of the Restatement

Finally, the court turns to § 191 of the Restatement which governs "Contracts to Sell Interests in Chattel." As the comment to this provision makes clear, most terms of sale are determined by the substantive provisions of the UCC. There are circumstances, however, when states vary in their adoption and interpretation of the UCC. This is one of those cases since the substantive law of implied warranty varies between the three states at issue.

Section 191 provides:

> The validity of a contract for the sale of an interest in a chattel **and the rights created thereby** are determined ... by the local law of the state where under the terms of the contract the seller is to deliver the chattel unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflicts § 191 (emphasis added).

This provision identifies the place of delivery (New Hampshire) as the source of substantive law unless there is a stronger policy reason for following another state's law. Vermont's relationship with the sale of the sealant cannot be said to outweigh that of the place where the sealant was made and the place where it was delivered. The strongest relationship is with New Hampshire, and none of the principles outlined in § 6 require a different decision. In identifying the place of delivery as the likely source of substantive law, § 191 brings a welcome measure of certainty to the analysis. The court follows this provision in identifying New Hampshire as the source of substantive law, which permits Hirschmann's implied warranty claim against ADCO to proceed despite a lack of contractual privity.

## Conclusion

For the reasons stated above, the Motion to Dismiss (Doc. 38) is DENIED.

Because the disputed legal issue in this case has been resolved through conflict analysis, there is no reason to certify the question of implied warranty to the Vermont Supreme Court as previously suggested. The Motion to Certify Question (Doc. 48) is therefore DENIED as moot.

Dated at Rutland, in the District of Vermont, this 6th day of July, 2016.

_____
Geoffrey W. Crawford, Judge
United States District Court